UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY HUDSON,                                              No. 09-11245

    Plaintiff,                                        District Judge Denise Page Hood

v.                                                        Magistrate Judge R. Steven Whalen

CORBY DeFOREST, ET AL.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant DeForest's August 8, 2009 *Motion for Summary Judgment* [Docket #22] which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing claims against this Defendant in both her individual and official capacities.

### I. BACKGROUND FACTS

The facts of this case are drawn from a Report and Recommendation recently filed by this Court. *Docket #35*. Plaintiff, a vision impaired MDOC inmate currently housed at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan, filed suit on April 3, 2009, alleging violations of his First, Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. §§1983, 1988.[1]

Plaintiff alleges that between September 26, 2006 and January 24, 2007, he sent a total

---

[1] Plaintiff's allegations that he was unable to obtain a job because of his vision impairment is also construed as a claim under the Americans With Disabilities Act, 24 U.S.C. §§12101 *et seq.* ("ADA").

-1-

of seven kites requesting that Defendant DeForest, JFC's Classification Director, place him in the facility's job pool. *Complaint* at ¶5. He alleges that in each case, DeForest denied the request, stating that his vision impairment made him ineligible for work or school. *Id.* Plaintiff also alleges that upon receiving DeForest's original response, he sent a medical kite to JCF Health Care, requesting his medical status and was informed by Health Care that his condition did not prevent him from working. *Id.* at ¶6. Upon presenting DeForest with the Health Care statement, Plaintiff alleges that on December 27, 2006, DeForest merely responded that "the computer . . . states no work or school." *Id.* at ¶7.

Plaintiff alleges that he filed a grievance on February 28, 2007 (JFC 07-03-00482-02e) complaining that unlike other handicapped and non-handicapped prisoners, he had not received a job assignment, noting that he held a job while previously housed at another MDOC facility. *Id.* at ¶11. He alleges that the Step One response mis-characterized his request, but nonetheless encouraged him to contact the Defendant Michigan Braille Transcribing Fund for job consideration. *Id.* at ¶12. Plaintiff alleges that the Step Two response, consistent with DeForest's initial responses, erroneously stated that Health Care had found him "medically unemployable." *Id.* at ¶13.

Plaintiff notes that the January 12, 2009 Step III response acknowledged that as of January 20, 2007, his medical status had been revised to show "no school only." *Id.* at ¶14. The Step Three response indicated that "'it has been determined that the grievant may be eligible for certain assistance and services under the ADA.'" *Id.*, *Docket #20, Exhibit B* at 1. JFC staff was advised "'to contact the ADA/Disability Management Coordinator in the Office of Equal Employment and Recruitment" for information regarding evaluation of the grievant and provision of assistance and services under the ADA, as appropriate.'" *Id.* Plaintiff, suing Defendants in their individual and official capacities, requests damages as

well as injunctive relief in the form of a declaration that his rights were violated by DeForest's "retaliatory and deliberate indifference," as well as receiving "the same opportunities that other sighted and unsighted prisoners have" in "getting a job." *Complaint* at pg. 7.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial

of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

#### A. First Amendment Retaliation Claims

Defendant argues first that "retaliation" claims are limited to one reference to "retaliatory" conduct in the *ad damnum* clause of the Complaint. *Defendant's Brief* at 2 (*citing Complaint* at pg. 7). She notes that the Complaint is otherwise bereft of factual allegations of First Amendment retaliation or even the word "retaliation. *Id.* Defendant also contends that Plaintiff efforts to secure a job do not constitute "protected conduct." *Id.* at 3 (*citing Thaddeus-X v. Blatter,* 175 F.3d 378, 399 (6th Cir.1999); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)).

To prevail on a First Amendment retaliation claim, a plaintiff must show he (1) "engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394. *Dean v. Byerley,* 354 F.3d 540, 551 (6th Cir.2004)(*citing Thaddeus-X supra,* 175 F.3d at 394-95 (6th Cir.1999)).

Plaintiff's First Amendment claim is subject to dismissal. While his grievance filing constituted "protected conduct," the retaliation claim derails at the second prong. Plaintiff claims for the first time in response to the present motion that "DeForest and her buddies H. Elum and J. Cooke conspired to remove" a fellow prisoner who had been helping him prepare pleadings in the present case. *Plaintiff's Response* at 1, *Docket #26*. However, he is apparently referring to events occurring after the present action was filed. The allegation of retaliation in the Complaint could not have referred to what appears to be a post-filing event. Further, although by the time Plaintiff's latest submission was filed the fellow prisoner had been "removed," Plaintiff was able to submit a cogent response to the present motion. Further, his claim that DeForest "conspired" with others to deprive him of the help of another prisoner stands completely unsupported by factual allegations. "[C]ourts will not look with favor on complaints which, trading on mere conclusory charges, fail to set out the specifics of a tenable claim." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506 (1st Cir.1987).

Finally, even assuming that the "conspired to remove" allegation found in the *Response* satisfies the second prong of *Thaddeus-X,* Plaintiff has left out the "where" and "when" from the "who, what, where, when and why" of the purported adverse action. Because Plaintiff has not alleged a temporal connection between the protected conduct and the removal or whether the protected conduct preceded the fellow prisoner's removal by a day, week, month, or year, the Court cannot discern a causal connection required for a *Thaddeus-X* claim.

### B. Eighth Amendment Claims

Likewise, Plaintiff has failed to show or even allege that his Eighth Amendment rights were violated. The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon prisoners. In order for a prisoner to establish an Eighth Amendment violation under § 1983, he must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981). Eighth Amendment claims must satisfy a two-prong standard. First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component). Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Plaintiff's failure to secure a prison job, by itself, does not state a claim of constitutional magnitude, much less an Eighth Amendment violation. *See Martin v. O'Brien,* 2006 WL 3488742, *2 (6 th Cir. 2006)(*citing Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989)("a prisoner does not have a constitutional right to prison employment or a particular prison job").

### C. Fourteenth Amendment Claims

Plaintiff's implied claim of due process violations arising from Defendant's failure to find him a job is defeated by the absence of a constitutionally protected interest in receiving or holding a job. *Newsom,* 888 F.2d at 374. Even to the extent that Plaintiff alleges that DeForest failed to comply with MDOC policy in refusing to place him in the job pool, "such violations are not, in themselves, sufficient to state a § 1983 claim.*"Bradford v. Gerth,* 2009 WL 1406675, *2 (W.D.Mich.2009)(*citing Pyles v. Raisor,* 60 F.3d 1211, 1215

(6th Cir.1995); *Sweeton v. Brown,* 27 F.3d 1162, 1166 (6th Cir.1994))("[E]ven if Defendants violated MDOC policies, Section 1983 does not provide redress for violations of a state law or prison policies").

Likewise, Plaintiff's implied Equal Protection claims are subject to dismissal. While he makes a generalized allegation that his Fourteenth Amendment rights were violated, he has failed to include any factual allegation showing that prison officials discriminated against him because of race, religion, or gender. In order to survive summary judgment, a claimant must present evidence that he was "denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir.1999). *See also Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir.2005); *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). Further, "a person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Id.*[2]

---

[2] The Complaint does not allege ADA violations. An ADA claim, *i.e,* Plaintiff experienced discrimination because of his vision impairment, would be unavailing. "[T]o establish a prima facie case of discrimination under the ADA" in the prison setting, "a plaintiff must prove that '(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.'" *Tucker v. Tennessee,* 539 F.3d 526, 532 -533 (6th Cir. 2008)(*citing Dillery v. City of Sandusky,* 398 F.3d 562, 567 (6th Cir.2005)). First, Step One and Two grievance responses indicate that Plaintiff was deemed unable to perform an outdoor job at RCF (similar to a position at a former facility) without assistance. *Docket #20, Exhibit B, Complaint* at ¶11. Thus, Plaintiff cannot show that he was "otherwise qualified" for the position.

More fundamentally, even assuming that Plaintiff was otherwise qualified, his claim would be defeated by his failure to show that DeForest intentionally discriminated against him. DeForest, stating that in October, 2006, Plaintiff was medically barred from either work or school, notes that at the time Plaintiff was medically cleared for work on January 10, 2007, "JCF did not have a job assignment that [he] could perform due to his blindness." *Defendant's Brief, Exhibit A* at ¶¶4-6. Despite JCF's institutional shortcomings, Plaintiff "cannot show that the discrimination was *intentionally* directed toward him . . . in particular."

### D. Immunity

#### 1. Qualified Immunity

Defendant also argues that she is entitled to qualified immunity. *Defendant's Brief* at 7. Because Plaintiff's constitutional and statutory rights were not violated, it follows that she is also entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a state officer or agent acting in the course of his or her official duties is protected by qualified immunity. *See also Dunigan v. Noble,* 390 F.3d 486, 495 (6th Cir. 2004).[3]

#### 2. Eleventh Amendment Immunity

---

*Dillery* at 568. DeForest also notes that since the lawsuit's inception, Plaintiff refused a newly created work assignment program for blind prisoners and declined a job assignment washing walls. *Id.* at ¶¶8-10.

[3]More recently, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory. *Pearson v. Callahan*, — U.S. — , 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *See also, Moldowan v. City of Warren* 578 F.3d 351, 375 (6th Cir. 2009). Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases. In this case, it is sufficient to say that under the first prong of *Saucier*, Plaintiff has not shown a constitutional violation as to this Defendant.

Defendant, noting that she was sued in his official as well as personal capacity, contends that she is also entitled to Eleventh Amendment Immunity. *Defendant's Brief* at 6.

Claims against defendants in their *official* capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are generally subject to dismissal on the basis of the immunity granted by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As such, claims for monetary damages against Defendants in their official capacities are barred.

However, "[Eleventh Amendment] immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). As such, Plaintiff's requests for injunctive relief are not *per se* barred by Eleventh Amendment Immunity.

However, Plaintiff's request for equitable relief in the form of "the same opportunities that other sighted and unsighted prisoners have" in "getting a job" should be denied. Defendant DeForest has stated that "[o]n April 6, 2009, a pilot work assignment program for blind prisoners was begun at JCF, noting that on May 27, 2009, Plaintiff was "reclassified . . . for participation in the pilot . . . program but refused to participate." *Defendant's Brief, Exhibit A* at ¶¶8-9. Further, on July 21, 2009, Plaintiff refused a job assignment washing walls. *Id.* at 10. Plaintiff's response to the present motion, acknowledging that he refused the job offers, apparently contending that he is entitled to a job working for Defendant Michigan Braille Transcribing Fund ("MBTF").

I recommend that the District Court deny this request. Whether to allow Plaintiff to

work for the MBTF is a decision best left to the MDOC. "Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators." *See also Fuller v. Burnett*, 2008 WL 793744, *8 (W.D.Mich. 2008), citing *Kendrick v. Bland,* 740 F.2d 432 at 438, n. 3, (6th Cir.1984)("[W]here a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting"). Because courts are "ill-equipped" to unilaterally micro-manage prison administration, this injunctive request should be denied. *Bruce v. Ylst,* 351 F.3d 1283, 1290 (9th Cir.2003).

## IV. CONCLUSION

For the reasons set forth below, I recommend that Defendant DeForest's Motion for Summary Judgment [Docket #22] be GRANTED, dismissing claims against this Defendant with prejudice.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served

upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 2, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 2, 2010.

S/G. Wilson
Judicial Assistant